## THE CITY OF GRAYVILLE
### v.
## WILLIAM W. GRAY ET AL.

INJUNCTION—INCREASING INDEBTEDNESS OF CITY.—A bill will lie at the suit of a taxpayer to enjoin a city from increasing the indebtedness of the city by erecting a city hall to cost $5,500 when there is only $1,000 in the city treasury, or in the process of collection appropriated for such purposes, when it is already indebted beyond the constitutional limit.

APPEAL from the Circuit Court of White county; the Hon. CARROLL C. BOGGS, Judge, presiding. Opinion filed July 10, 1886.

This is a bill in equity filed by the appellees as citizens and taxpayers of the city of Grayville, seeking to have the authorities of the city and its alleged contractors, W. H. Gilbert and

W. G. Wheatcroft, enjoined from building a city hall the probable cost of which would be about $5,500. It is alleged in the bill that the taxable property of said city as ascertained by the last assessment for State and county taxes is less than $150,000, and that the city became indebted to the Cairo & Vincennes Railroad Company in 1873 in the sum of $15,000, for which it issued its bonds payable in twenty years with eight per cent. interest, and that none of said bonds have been paid but are still outstanding and are an existing indebtedness against the city.

The bill avers that on July 6, 1885, the city council passed the annual appropriation bill for the present fiscal year including therein an item of $500 for the building of a city hall in said city, which, with $500 appropriated the preceding year, is the entire sum available for such purpose. That at said meeting the committee on city hall reported plans and specifications for a new building estimated to cost $5,000, which were accepted by the council and the clerk ordered to advertise for bids for the erection of it. At a subsequent meeting the bid of the defendant Wheatcroft to complete the stone and brick work for $2,090 was accepted, and defendant Gilbert having bid for the carpenter work $3,400, the contract for the work necessary to inclose the building was awarded to him.

The old city hall was advertised for sale and removed as the new one was to be built upon the same site; excavation for the foundation had been commenced, and a large amount of material had been hauled upon the ground by Wheatcroft at time of presenting the present bill. Alleges the appointment of a building committee by ordinance to superintend the construction of any building, and to make all contracts and take all bonds for the construction thereof and submit same to the council for ratification. That complainants have requested of the mayor of said city an examination of the contracts with the contractors, but were refused, and so are unable to state their exact contents. That if the contracts awarded are carried out it will increase the indebtedness of the city, which is already in excess of the constitutional limit of five per cent.

Defendants answered the bill, in which they admit the vari-

ous actions of the city council concerning the erection of the building, except the making of any contract with Wheatcroft and Gilbert which was ratified by the city council, and deny any intention on the part of the council or building committee to enter into any contract with them by which the indebtedness of the city will be increased or any money drawn out of the treasury that has not been appropriated and set apart for the building of the hall. They say further in their answer that they admit that the city hall building since the appointment of said building committee has been removed, and that some materials have been hauled to said place of building by defendant Wheatcroft, but they charge the truth to be, that said defendant was informed by said building committee, when said materials were being hauled, that he was doing so at his own risk. They admit that drafts of contracts with the said defendants Wheatcroft and Gilbert 'have been submitted to said building committee for the building of said city hall, *but no contracts have, as yet, been presented to and ratified by the city council with said defendants,* or any other person or persons, for the building of said new city hall; nor will any contract or contracts for that purpose be ratified by said city council by which the indebtedness of said city will be increased to the extent of anything. They admit that the attorney of complainants requested the mayor of said city to permit him to examine the drafts of contracts with Wheatcroft and Gilbert, and that such request was not granted by said mayor, because such drafts of contracts were not in the possession of said mayor, and had not been presented to and ratified, as contracts, by the city council, and were wholly inoperative as contracts with said city."

Respecting the present indebtedness of the city, alleged in the bill, they say: Defendants admit that it is probably true that the present indebtedness of said city is more than five per cent. of the assessed value of the taxable property in said city, as ascertained by the last assessment for State and county taxes, and that such indebtedness is, in amount and character, as alleged in complainant's bill, and that it may exceed the sum of $15,000. Other matters are stated in bill and answer

not necessary to notice to an understanding of the real points in controversy. The case was submitted to the court on motion to dissolve the injunction and upon affidavits filed in support of the pleadings of the respective parties, with the evidence furnished by the record of the city council, when the court sustained the injunction as to the city and dismissed the bill as to the other defendants, and the city appealed.

Messrs. BELL & GREEN, Mr. J. S. STEVENS, Mr. E. KERSHAW, and Messrs. ORGAN & ORGAN, for appellant; that courts of chancery will not attempt to control or restrain municipal officers in the exercise of their discretionary powers, cited Dillon on Municipal Corporations, §§ 58, 59, 396; Greeley v. People, 60 Ill. 19; Brush v. City of Carbondale, 78 Ill. 74; Town of Lemont v. Singer, etc., 98 Ill. 94.

Messrs. WILLIAMS & PARKER, for appellees ; cited R. S. Ch. 24, Art. 7, § 4, Ch. 38, § 208; City of Chicago v. Shober, etc., 6 Bradwell, 560; City of Philadelphia v. Flanigan, 47 Pa. 21; Bladen v. Philadelphia, 60 Pa. 464; Parker v. Philadelphia, 92 Pa. 401.

PILLSBURY, P. J. It is first objected that the evidence fails to establish the truth of the allegations in the bill that the bonds issued to the Cairo & Vincennes Railroad Company constituted a valid claim against the city. It is charged that the city is indebted in excess of the limit fixed by the constitution and the amount and character of such indebtedness is stated in the bill, and the admission of the defendants in their answer of the facts thus averred is sufficiently explicit to dispense with any affirmative proof thereof by the complainant. This objection is not now open to the appellant, even if valid upon a different record than here presented. It is apparent from the record that the main ground relied upon by the defendants below to obtain a dissolution of the injunction was, that no *written* contract had been executed by the building committee and contractors and reported to and ratified by the city council.

The object of the bill was to prevent an increase in the in-

debtedness of the city beyond the constitutional limit by erecting a city hall that would cost some $5,500, when there was only $1,000 in the city treasury or in the process of collection appropriated for such purpose.

That such bill will lie at the suit of a taxpayer is settled by the cases of Springfield v. Edwards, 84 Ill. 626, Howell v. City of Peoria, 90 Ill. 104, and others in our State not necessary to cite.

The claim set up in the answer, that no written contract had as yet been made with the contractors, and none was intended to be, that would increase the indebtedness of the city, does not seem in our view to be so fully supported in the evidence as to justify us in saying the court committed error in not so finding.

It is undisputed that the council had determined to erect the building according to certain plans and specifications approved by it; that bids had been received and accepted for work involving an expenditure of some $3,000, a committee appointed to make contracts and superintend the work; that the old city hall had been removed to make room for the new one; the contractors had commenced work and hauled a large amount of material upon the site, and were still proceeding in the performance of the work when restrained by the injunction. Such acts clearly demonstrated that it was the intention of the city to allow the contractors to proceed and complete their work according to the plans adopted, and under their bids awarding them the contract, and that the matter of the execution of a written contract and its ratification by the council was of secondary importance.

The court below might properly have found, from the proofs adduced, that neither the members of the city council nor the people of the city were entirely harmonious in their views regarding the propriety or necessity of a new hall, and that those members of the council favoring the work, and being a majority of the council, pursued the course they did to avoid the effect of any preventive action that might be taken by those opposed to it. The evidence in the record creates upon our minds, at least, a clear impression that such was the

object, and that they intended to have the building erected according to the plans and at the expense to the city designated in the contracts awarded, whether any written contract expressing such intention was or was not afterward executed by the committee or ratified by the council. It can scarcely be contended with any confidence that the city, after doing what it had done, would not be liable to the contractors if it had allowed them to proceed with their awarded contracts and completed the building although it had provided that a written contract should be signed.

Without referring to the evidence in detail, supporting the decree of the court below, we are satisfied with its conclusions thereon and affirm the decree.

Decree affirmed.